## McCrea Estate

*John F. Thaete*, for accountants and executrix.

*C. Clark Hodgson, William S. Stein*, and *John M. McNally, Jr.*, for claimants.

*Joseph F. M. Badli, 2d*, guardian ad litem, p. p.

KLEIN, P. J., June 6, 1960.—John McCrea died on September 11, 1932, leaving a will and codicils . . .

Testator, by the fifth codicil to his will, dated January 28, 1927, provided:

"Having recently found out that a number of my grandchildren are addicted to the cigarette habit, and having all my life detested this habit, as well as the use of alcohol, it is my Will that none of my grandchildren who at the time of my death or thereafter shall be given to smoking cigarettes or using tobacco in any form or imbibing in spirituous liquors shall receive any interest whatsoever in my estate, their interest to be divided equally among the remaining grandchildren."

Mr. Baldi, guardian and trustee ad litem, has requested that Letitia Margaret McGill and Alice E. Dorsey, grandchildren of testator and appointees under the will of Annie Friel, deceased, establish their qualification to participate in the distribution in the light of the provisions of this codicil.

The two granddaughters appeared as witnesses in their own behalf. They were both frank and open and the auditing judge accepts their testimony in its entirety as completely truthful.

They both stated that they do not now and never have smoked or used tobacco in any form. They both deny that they drank on or before September 11, 1932, the date upon which their grandfather died, but candidly admit that they are now moderate drinkers, the extent of their drinking being to take a martini or a highball, occasionally, on weekends or on special social events.

Margaret McCrea, a daughter of testator, testified that her father never took her to dinner that he didn't have a cocktail composed of whiskey and that he always had whiskey around his home. James McCrea, a son of testator, was also present in court and counsel stipulated that he would give the same testimony as his sister if called to the stand.

In Pennsylvania the right of a man to do what he will with his own has always been liberally construed. Accordingly, a donor, not under any obligation to give,

may give subject to such conditions as he pleases, provided they are not illegal: Holbrook's Estate, 213 Pa. 93 (1905) ; Thompson's Estate, 304 Pa. 349 (1931).

". . . a testamentary condition that a devisee or legatee shall attain or exhibit certain desirable traits of character or personal qualities, such as giving up and refraining from the use of intoxicating liquor, will be upheld by the courts": 96 C. J. S. §988, p. 478.

In Mickey's Appeal, 46 Pa. 337 (1863), a condition that the beneficiary refrain from falling into "drunkenness and revelry" was sustained by the Supreme Court. Similarly, a provision that the beneficiary "becomes a sober man" was held to be a valid condition: Overseers of Lewisburg v. Overseers of Augusta, 2 W. & S. 65 (1841). See also Steven's Estate, 164 Pa. 209 (1894).

Courts are reluctant to enforce forfeitures, on the other hand, and will only do so in clear cases, not in doubtful ones: Stanton v. Pittsburgh, 257 Pa. 361 (1917). In Davis' Estate, 275 Pa. 126, 130 (1922), the court said:

". . . 'whether there has been a performance or breach of a condition precedent, or of a condition subsequent, depends upon a construction of the condition, a reasonable construction to be given in favor of the beneficiary and a strict construction against a forfeiture, and upon the circumstances of the particular case': 40 Cyc. 1717".

Does the fact that testator's two granddaughters are moderate drinkers and take a drink occasionally on social events bar them from receiving any benefits from this estate?

To answer this question we must, of course, ascertain testator's true intention, as this is always the pole star in interpreting a testamentary writing: Sarver's Estate, 324 Pa. 349 (1936) ; Britt Estate, 369

Pa. 450 (1952) ; Weaver Estate, 390 Pa. 128 (1957). To find this intention we must study the entire instrument from its four corners: Brennan's Estate, 324 Pa. 410 (1936). In determining testator's intention, the court should place itself as nearly as possible in his position. As the courts have said on many occasions: "you may place yourself, so to speak, in the testator's arm chair and consider the circumstances by which he was surrounded . . . to assist you in arriving at his intention." See McGlathery's Estate, 311 Pa. 351, 355 (1933) ; Jackson's Estate, 337 Pa. 561 (1940) ; Wright Estate, 380 Pa. 106 (1955); 2 Jarman on Wills, (7th Ed.) p. 749.

It seems apparent from a study of this will that this testator was a kindly man, completely devoted to his family. Nowhere can we find any language which suggests that he was a harsh or stern taskmaster. He ends his will with this tender and endearing language:

"In conclusion, I desire to say that it is not through lack of confidence in my dear daughters that I restrict their enjoyment of my estate to the income only, because I would most cheerfully give unto them everything I possess, but, rather through loving thoughtfulness for their welfare, have I endeavored, by so doing, to insure their prolonged enjoyment of their inheritance lest, should they have absolute control thereof, it might, by bad investment or otherwise, be unfortunately lost and they eventually come to want."

Let us examine the language testator used in the fifth codicil more closely. After referring to the fact that he had recently found out that a number of his grandchildren were *"addicted* to the cigarette habit," he continues "and having all my life *detested this habit,* as well as the use of alcohol . . . it is my Will that none of my grandchildren who . . . shall be *given to* smoking cigarettes or using tobacco in any form or imbibing in spirituous liquors . . . shall re-

ceive any interest whatsover in my estate . . ."
(Italics supplied)

"Addicted" is defined in Funk & Wagnall's Dictionary (1935 Ed.) as "abandoned, attached . . . one is addicted to that which he has allowed to gain a strong, habitual and enduring hold upon action, inclination or involuntary tendency as to a habit or indulgence". Webster's Collegiate Dictionary (5th Ed.) says: "Addicted, often used in a bad sense, refers to one who is given up or strongly disposed to some taste, practice or pursuit." The New Dictionary (1927 Ed.) defines "given" as "addicted or disposed (often with 'to')."

This language, taken in its entirety, strongly indicates that testator was concerned only with excessive and habitual drinking and not with occasional social drinking. Surely, he did not detest the moderate use of alcohol all of his life as he, himself, was a moderate drinker and drank whiskey cocktails with his dinner. To hold that the use of alcoholic beverages in any degree would work a forfeiture of any interest the granddaughters may have in this estate, would attribute to his words a harsher and more literal meaning than we think testator intended. It is our duty to construe this codicil in a benign manner in favor of the grandchildren to avoid a forfeiture, if possible. We therefore conclude that the only reasonable interpretation of the fifth codicil is to hold that testator did not contemplate occasional, moderate drinking, such as the two granddaughters indulge in, as constituting a forfeiture of their rights to their share of the income. We are confirmed in this conclusion by the fact that none of the other beneficiaries, who would benefit if a forfeiture were declared, have raised any objection to the construction we are adopting.

The ruling in this adjudication is without prejudice to the right of any party in interest to raise the question of future violation by these two granddaughters,

or by any of the other grandchildren, of the provisions of the fifth codicil, in the light of the conclusion of the auditing judge in this adjudication . . .

And now, June 6, 1960, the account is confirmed nisi.