Opinion by
Rice, P. J.,
This is an appeal by the defendant from judgment in the plaintiff’s favor on a case stated in an action of ejectment. The instrument under which the plaintiff claims the land was executed in May, 1873, and reads as follows: “Know all men by these presents that I, Christian Sensabaugh, of Beaver Township, doth agree to lease to Beaver School, or to the Directors of said township, a certain piece or parcel of land situate in said township on the northwest corner of my farm, known as the Slayton farm, containing 1-3 of an acre for school purposes so long as it shall be used for school purposes, for the consideration of $5.00 to me in hand paid, and the Directors are to hold it as such and their successors in office as long as it shall be used for school purposes, after which this shall be null and void.” In 1892, Sensabaugh, the lessor, conveyed the farm, including the land in dispute, to the defendant, through which conveyance it is admitted the latter succeeded to the rights of the lessor in the school lot. Soon 'after the execution of the lease the school district erected a schoolhouse on the lot, and continued to hold school therein, and in a schoolhouse erected in its place, from 1873 or 1874 until some time in 1902, since which time no *498 school has been held there “because,” as agreed in the case stated, “of insufficient number of scholars.” That this was the reason for ceasing to hold school there is further shown by the agreement of the case stated (1) that at a meeting of the school directors in August, 1902, a motion was made and carried to let a contract “to carry the children from the Sensabaugh school to the Green school at 75 cents per day,” and (2) that at that time the number of scholars belonging to what is called the Sensabaugh district “had become so reduced that there had been but one scholar in attendance during the whole or greater part of the previous term of school.” In the early part of 1909, the defendant’s dwelling house on the farm burned and he and his family then moved into the schoolhouse, without obtaining the permission of the directors, and have since occupied it as a residence. This action of ejectment was brought in 1910.
The foregoing is an outline of the facts upon which, we think, the case turns. But before discussing the questions of law arising out of them, we will briefly refer to some other facts embraced in the case stated, and indicate our reasons for regarding them as not having such materiality as can affect the decision.
One of these facts is, that for a period (whether long or short is not stated) after the action of the directors in 1902 there were left on the premises a stove, a bookcase, a dictionary, some school books, and a chart on the wall. But it is also admitted that all of these articles, excepting the school books and the chart, were removed by the directors during the time in which no school was held there, and it is not stated that they were used or kept for use. The mere fact that these articles were not removed at once does not show, nor tend to show, that during the time they were kept there the lot was being used for school purposes, within the fair and reasonable intendment of the agreement.
Another fact alluded to is, that at a meeting of the board of directors in July, 1906, four years after they had ceased *499 to hold school in the premises, a motion was made and carried “that the Board meet at the Sensabaugh School House to see about repairing the same.” This resolution, it will be noticed, did not commit the board to repairing the schoolhouse. Whether they would repair was left for determination later. As it does not appear that they did anything pursuant to the resolution, or even met as was proposed, it is impossible to see that the mere passage of the resolution has any significance.
Still another fact alluded to is, that at a meeting of the board on June 7, 1909, there being at that time eight or nine pupils in the district, a resolution was adopted “that we repair the Sensabaugh School House ready for school use, so we can start a school as soon as there is scholars enough to make one.” While this resolution expressed the determination of the directors to repair the schoolhouse, and perhaps shows inferentially that it was their intention to make the repairs soon, yet it fails to show that they intended to resume the use of the building for school purposes at that time, or at any fixed time in the future. Nor is the fact admitted in the case stated that they had such intention. Whether the directors were stimulated to the passage of this resolution by the fact that the defendant had taken possession, we cannot say; but we are quite clear that, whether that was or was not the impelling motive, they could not affect his right, under the facts as they existed when he took possession, by subsequently adopting a resolution to resume the use of the building for school purposes if and when at some indefinite time in the future there should be a sufficient number of scholars.
The broad statement, that a conveyance of land to trustees for a charitable use is not hable to be defeated by nonuser, is to be taken with a qualification depending on the nature of the conveyance, its limitation- of the estate or interest conveyed, and its limitation of the use intended to be protected by it. Thus, where land was conveyed to trustees and their successors to erect a schoolhouse *500 for the perpetual use of the parties to the deed and the inhabitants residing nearer to that school than any other, and such other persons as the inhabitants might see fit to admit, it was held that a charity was created which was not divested by nonuser for more than seventeen years after a schoolhouse had been erected by contribution and used and a re-entry by the grantor: Wright v. Linn, 9 Pa. 433. This is the leading Pennsylvania case of its class, and it is much relied on by the learned judge of-the common pleas in his opinion entering judgment for the plaintiff. If the principles enunciated and applied in that case do not sustain the general proposition, that the right, interest, or estate, granted for such use is never determinable by nonuser, or do not sustain the specific proposition that the right, interest, or estate granted by this lease was not so determinable, we feel warranted in saying, after considerable research, that no other case of the class goes to that extent. It is important, therefore, to notice that, in that case, the legal title was conveyed to trustees, the grantor parting with his whole interest, except as an. inhabitant of the neighborhood. This, in itself, is sufficient to distinguish the case from one involving a mere lease of land, and a re-entry by the lessor after the lease has expired by its own limitation. Again, the conveyance was in trust to build a schoolhouse on the lot (quoting the language of the deed) “to the intent that the said lot of ground may be faithfully appropriated to the use of a public school for the benefit of the surrounding neighborhood, not only during the present generation, but to continue in perpetual succession forever.” As the court said, this emphatic language was decisive of the question. Moreover, the qualification we have suggested, namely, that the effect of nonuser depends on the nature of the conveyance, its limitation of the estate or interest conveyed, and its limitation of the use intended to be protected by it, is clearly recognized in the opinion of the court. Speaking of a charity falling within the general principles under consideration, Justice Bell said: “From *501 its nature, permanency either of the donation or its object would seem to be also requisite. Yet certainly perpetuity is not, and therefore a charity may exist consistently with an express or implied limitation.” Further on in the opinion he said: “It has long been held, that money given to build or repair a church, is given to a charitable use; and surely it must be agreed that land given as the site of a public schoolhouse, prima facie stands in the same category. It may be otherwise, where the object in the contemplation of the party is ephemeral, and the subject sought to be promoted is intended to be of temporary duration. This is the point upon which Kirk v. King, 3 Pa. 436, was made to turn; and, where such is the case, perhaps the grant may be taken as on an implied condition of reverter, so soon as the temporary object is accomplished. But such a condition should either expressly appear, or be unerringly indicated by the circumstances attendant on the gift.” In one form of expression or another the qualification we have above suggested has been recognized in all the cases in which it was important to consider the question, and necessarily it must exist. For, while the class of charities considered in Wright v. Linn and kindred cases are favored and are entitled to especial protection, the law relating to them rests on no principle that is paramount to the principle upon which the law of contract rests. As the eminent counsel for the plaintiff in error in Pickle v. McKissick, 21 Pa. 232, tersely said, “Contracts are not -to be violated in favor of a charity.”
It is suggested, as another reason for concluding that the plaintiff was entitled to recover in the ejectment, that the termination of the rights of the school district under the lease, and the consequent accrual of the right of the defendant to re-enter when he did, were dependent on lawful abandonment of the schoolhouse by the directors of the district, and that there was no lawful abandonment because the provisions of sec. 4 of the Act of April 11,1862, P. L. 471, were not complied with. That section, so far as material here, provides that “no schoolhouse shall be *502 located, or its location abandoned or changed .... except by the affirmative votes of a majority of the whole number of the directors or controllers thereof,” and that “the names of the members voting, both in the affirmative and the negative, shall be so entered on the minutes of the board by the secretary.” To carry the argument to its logical conclusion, it would amount to this, that, though school directors lease land for school purposes for a limited period, they cannot lawfully discontinue the use of the land for school purposes at the expiration of that period, without observing the formalities prescribed by the act of 1862; or, to take a less extreme view, that, though, by the terms of the lease, the rights of the district end when the use of the land -for school purposes is actually discontinued, and though the land is no longer needed, and therefore is not used, for school purposes, yet the right of possession may be perpetuated for all time by the mere refusal of the directors to pass a resolution in the manner and to the effect contemplated by the act. We cannot agree to a construction of the section which, without regard to the actual and expressed intention of the parties, would make it paramount to the clear terms of a lease under which the district obtained possession, or would enable the directors, by mere inaction, to nullify any of them. Such unreasonable construction is not required by the words of. the section; nor is it required in order to carry out any discoverable purpose which the legislature had in mind. True, ceasing to use the property for school purposes, because of insufficient number of scholars, or for any other reason which renders its further use for that purpose impracticable, is, in a sense, an abandonment of it; but it is not an abandonment brought about by the affirmative action of the directors, or which results from failure on their part to administer the trust faithfully and in accordance with the school laws of the commonwealth. It results rather from a proper administration of the trust, under the conditions that have arisen, and needs no formal resolution to abandon to make the cessation of *503 the use legal. Nothing that was said or decided in Birmingham Public School Dist. v. Sharpless, 27 Pa. Superior Ct. 630, is opposed to that view. The question under consideration there was, whether the defendant had proved a breach of a condition subsequent in a conveyance in fee which was to the effect that, if at any time thereafter the premises should be used or occupied for any other purpose whatsoever than those for which the same were granted, the grantor, or his heirs or legal representatives, should, if they should be so minded, have full privilege and authority to enter upon and take possession of the premises as of their first and former estate. To establish the fact of misuser, in breach of this condition, defendant relied on a resolution of the board of directors to move the school “temporarily” to another schoolhouse, and, as pointed out by our Brother Henderson, there was no other evidence in the case from which abandonment by the directors could be inferred or implied. It was held that the resolution was ineffective to establish the fact, (1) because it contemplated a mere temporary change; (2) because, as the requirements of the act of 1862 were not observed, the resolution was ineffective, of itself, to produce that result. The decision may be pertinent here so far as to support the contention that the resolution of August, 1902, was ineffective, in and of itself, to terminate the rights of the school district in the lot; but it does not sustain the contention that they could not be terminated except by a resolution of the board of directors adopted and recorded in accordance with the provisions of the act of 1862.
The contract in question was such as the parties had a right to make, and we have endeavored to show that there is nothing in the law relating to charitable uses, or in the act of 1862, to prevent us from giving effect to it according to the intention of the parties. This intention is to be ascertained from a consideration of all its provisions, bearing in mind always that the instrument is not a deed of the land in fee, but, at the most, a lease, if not a mere agreement to lease. To construe it as granting an estate *504 which was not determinable by the nonuser of the land for school purposes, but which was to be held in perpetuity, or so long as the grantee might desire to maintain the building, is to impute an intention which is not only not disclosed by the words of the instrument, but is directly negatived by the words, “after which this shall be null and void.” Evidently the parties considered that a time might arise when the land would no longer be needed or be used for school purposes, and intended to provide that, ■upon the happening of that event, the lessor should have a right to treat the lease as at an end, and to re-enter. Inasmuch as the defendant is in possession, it does not seem necessary to go into an extended discussion of the cases dealing with the distinction between a condition subsequent upon which the grantor or his assigns may re-enter, and a limitation which needs no re-entry to give it effect. But according to the doctrine of Henderson v. Hunter, 59 Pa. 335, the words,“so long as it shall be used for school purposes,” and the words, “as long as it shall be used for school purposes, after which this shall be null and void,” are terms of limitation and not of condition. As was said of the words under construction in the case cited, so it may be said of these words, they accompany the creation of the estate, qualify it, and prescribe the bounds beyond which it shall not endure; when this limit is transcended the estate expires by its own limitation.
The remaining question to be considered is, whether there was such discontinuance of the use of the land for school purposes as terminated the estate. Of course, nonuser of the land for school purposes during the intervals between school terms was not the thing which the parties had in view in fixing the limit beyond which the estate should not endure. It may be assumed also that they foresaw that exigencies might arise, as, for example, the burning of the schoolhouse, an epidemic of contagious diseases, or the like, that would compel temporary suspension of the use of the land for school purposes, even *505 during ordinary school terms, and did not intend that such temporary nonuser should end the rights of the district. But, under the agreed facts in the present case, the nonuser'was not of a temporary character. That fact is not admitted, nor is it fairly deducible from the facts that are admitted. To recur again to the admission of the case stated, “no school has been held there since 1902, because of insufficient number of scholars.” This was a good and lawful reason for discontinuing the use of the land for school purposes, and meets the proposition for which appellee’s counsel cite Henderson v. Hunter, that “a discontinuance of the use without authority would not ipso facto determine the use.” When the defendant re-entered, this condition of nonuser and reason for nonuser had existed for seven years, and no facts are stated from which it can be implied, with any degree of certainty, that it would not continue indefinitely. True, there was the possibility that, the conditions might change; but this bare possibility, without more, was not sufficient to rebut the prima facie legal presumption that the discontinuance of the use of the land for school purposes was not temporary but permanent. This conclusion is supported by Kirk v. King, 3 Pa. 436. And, although it was said in Miller v. Porter, 53 Pa. 292, that Kirk v. King was practically overruled in Wright v. Linn, an examination of the cases will show that this is true as to one part of the decision only. So far as the point for which we cite it is concerned, the case is still an authority. It rests on sound principle; for to hold that the defendant in the present case could not successfully defend his' possession, except by proof, amounting to a demonstration, that the condition that had existed for seven years when he took possession would continue for all time, would be to require an impossibility, and, in effect, would defeat the limitation solemnly agreed upon.
We conclude that the facts agreed upon are not sufficient, without more, to entitle the plaintiff to possession of the land; therefore, in accordance with the stipula *506 tion of the ease stated, judgment should be entered in favor of the defendant, who is the owner of the fee and is in possession.
The judgment is reversed, and judgment is now entered on the case stated in favor of the defendant.