## Lancaster City School District v. Lancaster County.

*Robert Ruppin, John N. Hetrick* and *Charles G. Baker,* for rules.

*George T. Hambright, J. Andrew Frantz, J. Roland Kinzer* and *John E. Malone,* contra.

LANDIS, P. J., Jan. 14, 1928.—The facts of this case, as presented on the trial, are not disputed. By the Act of April 1, 1822, P. L. 110, it was provided that "the city and incorporated boroughs of the County of Lancaster shall be erected into a district for the purposes of this act, to be denominated 'The Second School District of the State of Pennsylvania.'" Section 2 directed that the Court of Common Pleas should, at the regular term in April following, and thereafter, appoint twelve suitable citizens, residing within the City of Lancaster, to be directors of the public school or schools in the said city, which should be denominated "The First Section of the 'Second School District.'" Section 7 authorized the said directors "to draw upon the county treasury for the money necessary in erecting, establishing and maintaining the school or schools within the said 'First Section,'" and that "the order of the said directors upon the county treasurer made at any regular or special meeting for any sum or sums of money necessary for carrying this act into complete effect" should "be the said county treasurer's authority for paying any such sum or sums to the person or persons mentioned in such order. . . ."

The directors were evidently appointed, and on June 19, 1822, ten of them entered into a written agreement with William Kirkpatrick, whereby the latter covenanted to convey "in such manner as may be adjudged legal and proper for the use of the public school in the said city, to be established agreeably to the provisions of an Act of the General Assembly of the Commonwealth of Pennsylvania, entitled 'An act to provide for the education of children at the public expense within the city and incorporated boroughs of

the County of Lancaster,' passed the 1st day of April, 1822, all that certain lot of ground situate on the corner of Prince and Chestnut Streets, in the said city, containing in front on Prince Street about 128 feet 9 inches, and extending in depth on Chestnut Street about 122 feet 6 inches." A title to the premises and possession were to be given on July 1, 1822. It was further provided that the consideration of $1000 should be paid for the same, to be secured on the premises, and the interest should be paid annually to William Kirkpatrick, and the principal at any time the directors of said public schools might consider advisable within five years from the time of the execution of the title for said premises. The deed was not executed and delivered, as set forth in the agreement; but the yearly interest of $60 was paid until at least July 1, 1835. Who made these payments does not appear. A school building was, in the interim, erected on the land, and as the Act of 1822 provided that money for this and the general purposes of conducting the school should be paid on the warrant of the directors from the county treasury, and no other method was provided, it is fair to presume that the payments for the same came from this source.

By the Act of April 1, 1823, P. L. 270, it was enacted that "from and after the passage of this act, and until the 1st day of April, 1824, it shall not be lawful for the directors of the public schools in the First Section of the Second School District to draw from the treasury of the County of Lancaster any moneys except such sums as may be necessary for the payment of such contracts and engagements as shall have been entered into by them previous to the passage of this act, nor shall they be authorized in any year thereafter to draw from the treasury of said county any moneys except what may be absolutely necessary for the support and continuance of said schools, nor shall the amount which may be so drawn in any one year exceed the sum of $800." And so much of the act to which this was "a supplement as" was "hereby altered or supplied, together with the 12th section of said act, be and they are hereby repealed."

No other legislation of importance in this discussion was passed until "An act relative to Lafayette College and to public education in the City of Lancaster," dated April 15, 1835, P. L. 289. Section 3 of the same provided that "the Commissioners of Lancaster County be and they are hereby authorized to pay to William Kirkpatrick, his heirs, executors, administrators or assigns, the purchase money for a lot of ground in the City of Lancaster, purchased from him by the directors of the First Section of the Second School District in said city, and to take a conveyance for the same and hold the same for the use of the Directors of the First Section of the Second School District in the City of Lancaster aforesaid, so long as the building erected on said lot of ground shall be used by the said directors for the purposes of education, and when the same shall cease to be so used, the said lot of ground and buildings thereon erected shall be vested in the Commissioners of the County of Lancaster for the use of the said county." In pursuance of this act of assembly, William Kirkpatrick, on June 7, 1836, conveyed this lot of ground to Jacob McAllister, Adam Bare and John Long, Commissioners of the County of Lancaster, in consideration of the sum of $1000 paid by them to him. In its preamble, the provisions of the above-quoted act of assembly are recited and the *habendum* reads: "To have and to hold the said above-described messuage, lot, parcel or piece of ground referred to in the above-recited act or part of an act of assembly . . . unto the said Jacob McAllister, Adam Bare and John Long, commissioners as aforesaid, and their successors in office, for the purposes set forth and designated in the above-recited act or part of an act of

assembly forever, except and subject to such ground rents as are now due thereon and as the said William Kirkpatrick held the same subject to on the nineteenth day of June in the year of our Lord one thousand eight hundred and twenty-two, at which date he agreed to grant and convey the above-described premises to the Directors of the First Section of the Second School District in the City of Lancaster for the education of children at the public expense."

The school district and its successors, under the various school laws passed subsequent to this date, remained in possession and used the same for purely school purposes until 1909 or thereabouts. It was then altered and repaired by the school board and used as an administration building for the schools of the city until 1917. Since that, it has been used for the same purpose under a rental by an agreement with the United States Government. The Act of 1835 has never been specifically repealed, and I do not think it has been repealed by implication. Considerable doubt arises whether it could be, so as to vest the title in the school district. On the faith of it and in accordance with its terms, the County of Lancaster paid for this land, and that, I think, gave it such an ownership as could not be abrogated or taken away, at least without due compensation. However, that question does not here arise.

On Feb. 15, 1916, proceedings were commenced on the part of the United States, in the District Court of the United States for the Eastern District of Pennsylvania, for the condemnation of this land and the buildings thereon and other land, for a post-office site. Viewers were duly appointed on April 6, 1916, and on May 15, 1916, they made their report to the court. On July 11, 1917, a decree was entered by the court in which there was awarded to the County of Lancaster, as the owner of Purpart B (the land now claimed by the plaintiff), the sum of $42,833. On Oct. 2, 1917, this money was paid to the Commissioners of Lancaster County and it is now in their hands. In the decree, it is stated: "It is further ordered, adjudged and decreed that upon the payment into the registry of the said court of the sum of $42,833, the amount awarded to the County of Lancaster, the title to the land, estate and interest above specified as Purpart B, owned by the County of Lancaster and thus paid for, shall be and become vested in fee simple in the United States of America absolutely." In the proceedings, no claim to the land was made by any one but the County of Lancaster.

On June 14, 1926, the plaintiff filed a bill of complaint against the defendant and its county officers, asking that a decree be entered whereby the defendants shall be ordered to state an account of these moneys and pay over the same to the Lancaster City School Board. Preliminary objections were made to the bill, and, after hearing the same, the court certified the case to the law side of the court for trial. This having been done, the case in due order came on for trial. Upon the trial, a verdict was directed in favor of the defendant, and the plaintiff now moves for judgment *non obstante veredicto*, or that a new trial shall be granted.

The first proposition to consider is the right, if any, which the school district may have, as the successor of the First Section of the Second School District of the State of Pennsylvania, to hold the beneficial interest in this land. It may be true that, though the territory of the present school district is coterminous with the school district as afterwards established, it is not the same as the First Section of the Second District as created by the Act of 1822. I do not, however, think that, for that reason, the law should be construed as entitling the plaintiff to no interest under the Kirkpatrick deed, for the parties for almost 100 years construed for themselves its meaning that this

ground should be used for school purposes under the control of said school district, and they so used it. No matter how the schools were controlled, I think, for the purposes of this case, the present school district can be said to have been legally in the occupancy of this property up to the time of its taking by the United States Government, and we will consider the main proposition from this standpoint.

The question which then arises is the effect of the deed from Kirkpatrick to the County of Lancaster. In Slegel v. Lauer, 148 Pa. 236, it is held that "an easement is a liberty, privilege or advantage which one may have in the lands of another without profit. . . . It cannot be an estate or interest in the land itself or a right to any part of it." A base or qualified fee is a fee of which the duration depends upon the concurrence of collateral circumstances which qualify and debase the purity of the grant. The qualification must be found in the instrument itself; but no special or technical words are required to establish it. Where an estate is conveyed in fee for a special purpose "and no other," the fee is a base fee determinable upon the cessation of the use of the property for that purpose. This general principle is modified to the extent that when land is conveyed for burial or school purposes and for no other purpose, but with no provision for a reversion or forfeiture, it may be sold and conveyed as a fee: Sapper v. Mathers, 286 Pa. 364. But upon the determination of a base fee, the property reverts to the grantor without any claim or act on his part, where it is determinable by limitation. This principle has never been denied in any of the cases, and the School Code of May 18, 1911, § 120, P. L. 314, provides that "all the public school property in this Commonwealth, real, personal or mixed, now held, owned or possessed by any.school district, sub-school district or ward school district therein, or that may be held, owned or possessed by any municipality for the use of any school district or for school purposes, is hereby transferred and assigned to and shall be owned by and vested in the proper school district . . . subject to all the trusts, conditions and liabilities legally applicable thereto."

It must again be recalled that the First Section of the Second School District never had the legal title to this land. It is certain it never paid for the land, and there is no proof that it paid for the initial improvements. The land was to be held for the use of the Directors of the First Section of the Second School District as long as the building erected on said ground should be used by the said directors for the purposes of education, and here was a definite and fixed time for its use. But even under these conditions, had there been no agreement as to its disposal after that time, I think the fee could be considered as vested in the present school board and subject to its disposal. See Sapper v. Mathers, supra. The deed then proceeds to say: "And when the same shall cease to be so used, the said lot of ground and buildings thereon erected shall be vested in the Commissioners of the County of Lancaster for the use of the said county."

In Methodist Episcopal Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. 608, it was said that "wherever words in a conveyance are relied upon as creating a condition subsequent, so as to create a base or determinate fee, they must not only be such as would of themselves create a condition, but must be so connected with the grant as to qualify or restrain it." In Kirk v. King, 3 Pa. 436, a lot was conveyed "to the employers of a certain school" to hold the same for an "English school-house and no other purpose." A school-house was built upon the lot and occupied as such for some years, and was then discontinued for seven years, when the vendee of the original grantor entered upon the lot and removed the school-house. It was held that the

"employers, &c.," not being incorporated, were incapable of taking the fee and that the legal title remained in the grantor; that the purpose for which the lot was to be used was the substantial consideration, for the grant, upon the terms of which the nature of the plaintiff's equity depended, and that the discontinuance of the school for seven years raised a legal presumption of abandonment. In Wright v. Linn, 9 Pa. 433, the land in dispute was conveyed to trustees and their successors to erect a school-house for the perpetual use of the parties to the deed and the inhabitants residing nearer to the school-house than any other and such other person or persons as the inhabitants might see fit to admit. This was held to be a charity. Mr. Justice Bell, in commenting on the case of Kirk v. King, *supra*, said: "It may be well enough also to observe that this case differs from Kirk v. King in another particular, upon which some stress was laid. There, the legal title remained in the original owner, the 'school company' having but an equity, which was thought to be dependent on the agreement to use the ground 'for an English school-house and for no other purpose.'" In Courtney v. Keller, 4 Penny. 38, a grant in fee to a school board provided "that in case the school law now in existence should be abolished and the public school cease to exist," the land should revert. The school board subsequently purchased another lot, removed a portion of the school building, fitted up the remainder as a dwelling, and leased it to their janitor for a money rental. It was held, in ejectment by the assignee of the heirs of the grantor, that the design of the deed was not to enable the directors to raise a revenue by building dwellings upon the lot and renting them, but that the intention of the parties was fully interpreted and fulfilled when a school-house was erected and that when there was an abandonment of the use, the right ceased.

In the case before us, the title was made to the County Commissioners of the County of Lancaster. The right of the original school directors was contingent upon the use of the land for school purposes. The right of the plaintiff can rise no higher. When the use ceased, the county commissioners were entitled to receive the land for county purposes. When the United States Government took it, the use for school purposes necessarily ceased, and that being so, the title vested in the county, freed from all conditions in this respect. If this be true, then the damages were properly awarded to the county and the school board has no right to claim them, unless some other good reason is advanced for its claim.

The next question raised is whether the plaintiff acquired, because of long user, a title by prescription. The positions advanced by it—first, that it holds under the deed of Kirkpatrick, and, second, that it has a title by prescription—are not harmonious. Assuming, as I do, that it obtained this land as the successor of the First Section of the Second School District, which entered by virtue of the deed, it seems to me that no title by prescription has been made out. It is a maxim of the law that "prescription is a title by authority of the law, drawing its force from use and time." It is an implication which presumes a grant. But when the entry is permissive, deriving its authority from an agreement between the parties, and the occupancy is limited and under certain specified conditions on the happening of which the occupancy is to cease, there can be no adverse possession. In Landis's Appeal, 102 Pa. 467, where a grant was made to trustees for the benefit of the Mennonite Congregation of Colebrookdale, and a schism arose in the church, whereby part of the congregation seceded and formed themselves into a new congregation, and by agreement both parties worshipped in the meeting-house for a period of twenty-nine years, it was decided that the seceders could not acquire

a title by prescription, as the occupancy was permissive and they were at best tenants by sufferance. In this case, I think the same principle applies. Originally, the First Section of the Second School District of Pennsylvania retained the property under a distinct agreement that when it ceased to be used for school purposes, "the said lot of ground and buildings thereon erected shall be vested in the Commissioners of the County of Lancaster for the use of the said county." As the successor of this district, the plaintiff was bound by that agreement; and without showing a clear and distinct purpose to hold adversely, which it has, in my judgment, not done, it cannot now rest upon a title by prescription.

The sole remaining question is whether, in any event, the plaintiff's claim is barred by the statute of limitations. The plaintiff asserts that, as the title rested in it and the defendant claimed and received the condemnation money for the land, it has a right in this action to recover it. No authority of the courts of this State has been cited to us to sustain this proposition; but that point is not at this time involved. This proceeding has been certified to this court as a court of law. The statute of limitations provides that claims of this character—that is, actions of debt (now *assumpsit*) grounded upon any lending or contract—shall be commenced within six years after the cause of such action or suit and not after. In this case, as I have already stated, the condemnation proceedings were had in 1916, and the money found to be due thereon was paid in 1917. Therefore, as the suit was commenced by bill filed on July 14, 1926, nearly nine years intervened between the time the plaintiff was entitled to receive the money and the time it brought this suit. It would for this reason seem to me that the statute itself bars a recovery. I, however, prefer to place this decision on the former ground that under the deed the County of Lancaster was the owner of this land and was entitled to receive, as it did, the valuation money fixed by the viewers.

I am of the opinion that the verdict was properly directed in favor of the defendant, and, because of this, the motion for judgment *non obstante veredicto* is denied and the rule to show cause why a new trial should not be granted is discharged.

From George Ross Eshleman, Lancaster, Pa.