## Phillips et al. v. North Beaver Township School District

*C. H. Akens*, for plaintiffs; *Aiken & Braham*, for defendants.

CHAMBERS, J., October 12, 1931.—The bill in this case was filed by Florence L. Phillips and the heirs and devisees of Ephriam Phillips.

The bill alleges a conveyance by Ephriam Phillips and the above-named Florence L. Phillips, his wife, of two lots of land in a plan known as Willow Grove, in North Beaver Township, this county, to Frank McGraw, D. O. Wilson, John McCurley, John P. Best, R. H. Lusk and John Hope, School Directors of North Beaver Township, and their successors in office, to be held so long as the same be used for common school purposes and whenever vacated for school purposes, the same to fall back to the parties of the first part.

The bill further alleges that the grantees took possession, erected a school building and used the same for school purposes until the end of the school term in April, 1924, at which time it is alleged the premises were vacated and abandoned, the blackboards and seats removed, and that no further use has been made of the premises for school purposes.

It is further alleged that by the failure to use the premises for school purposes the property has reverted to plaintiffs.

The prayer is for a decree declaring that the school district has no estate in said lands, cancellation of the deed, etc.

The answer filed admits the conveyance of Ephriam Phillips and wife to the school district as set forth in the bill. It further admits that no school has been held on the premises since April, 1924, and that the blackboards and seats have been removed from the building and that such pupils as had theretofore attended said school were in attendance at a consolidated school in the village of Mt. Jackson. It is denied, however, that the premises have been abandoned, and it is specifically alleged that the school directors have never passed any resolution abandoning the premises for school purposes and have no intention to abandon the same. It is also alleged that with the growth of population in the township and the limitation on the increasing of indebtedness, it is entirely possible that in the future the use of the premises for school purposes must be resumed.

With the bill and answer so filed, a day was fixed for hearing. On the day so fixed the parties appeared by counsel only, and although opportunity was given both plaintiffs and defendants, they each declined to offer testimony.

At a time fixed for argument, the parties appeared by counsel and the case was argued.

This presents a rather novel situation to the court. We find nothing in the Equity Rules covering a situation such as this, and are not entirely clear as to the course to be pursued. However, we have concluded to substitute for our findings of fact the pertinent facts admitted by the pleadings, following the same with a discussion, our conclusions of law and a decree nisi.

### Facts established by admissions in the pleadings

1. Ephriam Phillips in his lifetime was the owner of a tract of land in North Beaver Township, Lawrence County, Pa.

2. A part of these lands was plotted into lots and the plan, known as Willow Grove, was recorded in the Recorder's Office of Lawrence County on March 25, 1891.

3. On February 11, 1897, Ephriam Phillips and Florence L. Phillips, his wife, conveyed lots Nos. 74 and 75, being contiguous lots in said Willow Grove plan, to Frank McGraw, D. O. Wilson, John McCurley, John P. Best, R. H. Lusk and John Hope, School Directors of North Beaver Township, and their successors in office, the deed of conveyance containing the following provision:

"To have and to hold the said piece of ground with the appurtenances to the parties of the second part so long as it shall be used for common school purposes, provided the parties of the second part agree that whenever said piece of ground be vacated for school purposes, then the same shall fall back to the parties of

the first part, who, in consideration of this agreement, have made the within grant."

4. Ephriam Phillips died April 29, 1897, testate, and the parties plaintiff are those who have succeeded by devise and devolution to the rights of Ephriam Phillips in the lands involved herein.

5. The grantees took possession of said lots Nos. 74 and 75 in the said Willow Grove plan and erected thereon a school building with the usual equipment of blackboards and seats for school purposes, and used the same for school purposes and held terms of school therein until the end of the school term in April, 1924.

6. No sessions of school have been held on these premises since April, 1924, and such pupils as might have attended said school have been in attendance at a consolidated school in the village of Mt. Jackson, in said township.

7. Since April, 1924, the School Directors of the School District of North Beaver Township have removed the blackboards and seats from the building on the premises, and there has been no use of the building for school purposes since April, 1924.

8. The School Directors of the School District of North Beaver Township have never passed any resolution abandoning said premises for school purposes.

9. While the School Directors of the School District of North Beaver Township allege the possibility of these premises being needed for school purposes at some time in the future, no definite time is fixed for the reopening of said school, nor is it positively alleged that said school will ever be reopened for school purposes.

## Discussion

The plaintiffs contend that this case is squarely ruled in Beaver Township School District v. Burdick, 51 Pa. Superior Ct. 496. In that case Christian Sensabaugh executed the following:

"Know all men by these presents, that I, Christian Sensabaugh, of Beaver Township, doth agree to lease to Beaver School, or to the Directors of said township, a certain piece or parcel of land situate in said township, on the northwest corner of my farm, known as the Slayton farm, containing ⅛ of an acre, for school purposes so long as it shall be used for school purposes for the consideration of $5.00 to me in hand paid, and the Directors are to hold it as such and their successors in office as long as it shall be used for school purposes, after which this shall be null and void."

A school house was erected upon the lot and school held therein from 1873 or 1874 until 1902. At this time the number of pupils had decreased to such an extent that it was thought advisable to discontinue the sessions of school and transport the pupils to an adjoining school.

In 1909, Burdick, the defendant, the then owner of the Sensabaugh farm, had his dwelling house destroyed by fire and moved into the vacant school house and used it for his residence. In 1910 the school district brought its action of ejectment for the lands.

On a case stated, judgment was entered for plaintiffs in the court below, but on appeal the judgment was reversed and judgment entered for the defendant.

The opinion of the Superior Court is written by Rice, P. J., and is very exhaustive. Practically all the questions raised before us in the case at bar are discussed and disposed of by Judge Rice in his opinion. In that case it appeared that on one or two occasions after school had been discontinued the board passed resolutions looking toward the repair of the building, but no definite action was taken authorizing repairs. On June 7, 1909, the school board adopted the following resolution:

"That we repair the Sensabaugh School House ready for school use, so we can start a school as soon as there is scholars enough to make one."

In commenting upon this, the court says, at page 499 of the opinion:

"While this resolution expressed the determination of the directors to repair the school house, and perhaps shows inferentially that it was their intention to make the repairs soon, yet it fails to show that they intended to resume the use of the building for school purposes at that time. . . . Whether the directors were stimulated to the passage of this resolution by the fact that the defendant had taken possession, we cannot say; but we are quite clear that, whether that was or was not the impelling motive, they could not affect his right, under the facts as they existed when he took possession, by subsequently adopting a resolution to resume the use of the building for school purposes if and when at some indefinite time in the future there should be a sufficient number of scholars."

In the case at bar we have only the allegation that there is a possibility that sometime in the future there may be such an increase in population and such a limitation upon the increasing of indebtedness of the school district as to make it necessary to resume the use of these premises for school purposes. If the rights of Burdick were not affected by the action of the board in the case cited, we are convinced that the allegations of defendants in the case at bar could not affect plaintiffs.

The defendants in the case at bar place great stress upon the fact that the board of school directors has not passed any resolution declaring its intention to abandon these premises and that it does not intend to pass any such resolution, contending that until such action be taken the title remains in the school district under the authority of section 603 of the School Code of May 18, 1911, P. L. 309, which reads as follows:

"No property that has heretofore been acquired by, conveyed or granted to, any school district in this Commonwealth for school purposes, or which may hereafter be acquired by any school district for school purposes, shall be considered as abandoned until the board of school directors of such districts shall pass, by a vote of the majority of the members of the board, a resolution declaring it to be the intention of such district to vacate and abandon the same, whereupon all right, title, and interest of such district in such premises shall be fully terminated."

It will be noted that the above section of the School Code does not differ very materially from the provisions of section four of the Act of April 11, 1862, P. L. 471, which provides:

"No school house shall be located, or its location abandoned or changed, . . . except by the affirmative votes of a majority of the whole number of the directors or controllers thereof."

This provision of the Act of 1862 was invoked in the case of Beaver Township School District v. Burdick, supra, and is discussed at length in the opinion on pages 501-503. Among other things, the court says (page 502):

"True, ceasing to use the property for school purposes, because of insufficient number of scholars, or for any other reason which renders its further use for that purpose impracticable, is, in a sense, an abandonment of it; but it is not an abandonment brought about by the affirmative action of the directors, or which results from failure on their part to administer the trust faithfully and in accordance with the school laws of the Commonwealth. It results rather from a proper administration of the trust, under the conditions that have arisen, and needs no formal resolution to abandon to make the cessation of the use legal."

In conclusion, on this phase of the question the court says (page 503):

"The contract in question was such as the parties had a right to make, and we have endeavored to show that there is nothing in the law relating to charitable uses, or in the Act of 1862, to prevent us from giving effect to it according to the intention of the parties."

The court then passes to a consideration of the limiting words of the instrument, saying (page 504):

"According to the doctrine of Henderson v. Hunter, 59 Pa. 335, the words 'so long as it shall be used for school purposes,' and the words, 'as long as it shall be used for school purposes, after which this shall be null and void,' are terms of limitation and not of condition. As was said of the words under construction in the case cited, so it may be said of these words, they accompany the creation of the estate, qualify it, and prescribe the bounds beyond which it shall not endure; when this limit is transcended the estate expires by its own limitation."

The court there proceeds to discuss the question as to whether there has been such a nonuser as to terminate the estate, and says (page 505):

"When the defendant reëntered, this condition of nonuser and reason for nonuser had existed for seven years, and no facts are stated from which it can be implied, with any degree of certainty, that it would not continue indefinitely. True, there was the possibility that the conditions might change; but this bare possibility, without more, was not sufficient to rebut the prima facie legal presumption that the discontinuance of the use of the land for school purposes was not temporary but permanent."

We are persuaded that the above case rules the case at bar. No school has been held in this building since April, 1924, nor has it been used for school purposes since that time. It has been standing there during these years a vacant and abandoned building in fact, and during these years it does not appear that any action has been taken by the board of school directors looking toward the repair or preservation, as was done in the case cited. Nor has the board taken any action looking toward the reopening of the school in the near future. At best, the reopening of the school at any future time is but a bare possibility.

An inspection of the grant of Ephriam Phillips and wife to the School Directors of North Beaver Township indicates that this property was conveyed for the purpose of having a school operated. It is stated in the conveyance as the only consideration: "in consideration of an agreement hereinafter specified," the agreement being "provided the parties of the second part agree that whenever said piece of ground be vacated for school purposes, then the same shall fall back to the parties of the first part, who, in consideration of this agreement, have made the within grant."

It being the clear intent of the instrument to convey this only for and as long as a school should be maintained upon it, may the school directors continue to hold it when, for a period of over seven years, they have let it stand idle and vacant and at the present time have nothing more to say than that at some indefinite time in the future there is a possibility that it may be required for school purposes?

To permit them to do this would be in clear violation of the spirit and letter of the contract, and, as we see it, nothing would warrant such a course unless it might be section 603 of the School Code of 1911, and we are satisfied it does not. We feel that the reasoning of Judge Rice in the case above cited relative to the Act of 1862 applies with equal force to this act, when he says (page 502):

"To take a less extreme view that, though, by the terms of the lease, the rights of the district end when the use of the land for school purposes is actually discontinued, and though the land is no longer needed, and, therefore, is not used, for school purposes, yet the right of possession may be perpetuated for all time

by the mere refusal of the directors to pass a resolution in the manner and to the effect contemplated by the act. We cannot agree to a construction of the section which, without regard to the actual and expressed intention of the parties, would make it paramount to the clear terms of a lease under which the district obtained possession, or would enable the directors, by mere inaction, to nullify any of them. Such unreasonable construction is not required by the words of the section; nor is it required in order to carry out any discoverable purpose which the legislature had in mind."

Even were we to give the Act of 1911 the construction contended for on the part of the defendants, we would be met by the well-known proposition stated by Mr. Justice Agnew on page 344 of the opinion in the case of Henderson et al. *v.* Hunter et al., 59 Pa. 335, where he says:

"A deed is a contract inter partes, the grantor on one side and the trustees on the other, and even the legislature cannot impair the contract."

This principle of law is so well established that we deem it unnecessary to cite further authority.

The defendants raise another question by their answer and contend that equity has no jurisdiction, but that the case should be in the law side of the court.

We are of opinion this position is without merit.

"Equity has jurisdiction to remove clouds from titles, and, in a proper case, it will direct the instrument casting the cloud on the title to be delivered up and canceled:" Onorato *v.* Carlini et al., 272 Pa. 489, 492. See, also, Octoraro Water Co. *v.* Garrison et al., 271 Pa. 421, Richmond *v.* Bennett, 205 Pa. 470, and Wilson *v.* Cather, 214 Pa. 3.

As we see it, the right of the plaintiffs is clear. The estate of the school district has terminated. The grant was a limitation and needs no entry to terminate it, and the deed of the school district is of no further efficacy other than to cast a cloud upon the title of the plaintiffs, and the prayer of the bill should be granted.

## Conclusions

1. The title of the School District of North Beaver Township in lots Nos. 74 and 75 in the plan of lots known as Willow Grove is ended and determined.

2. The title to said lots Nos. 74 and 75 is now vested in the plaintiffs in this action.

3. The deed from Ephriam Phillips and Florence L. Phillips, his wife, to Frank McGraw, D. O. Wilson, John McCurley, John P. Best, R. H. Lusk and John Hope, School Directors of North Beaver Township, dated February 11, 1897, and recorded in the Recorder's Office of Lawrence County, March 18, 1897, should be delivered up and canceled.

## Decree nisi

Now, October 12, 1931, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: That the deed dated February 11, 1897, between Ephriam Phillips and Florence L. Phillips, his wife, and Frank McGraw, D. O. Wilson, John McCurley, John P. Best, R. H. Lusk and John Hope, School Directors of North Beaver Township, recorded in the Recorder's Office of Lawrence County on March 18, 1897, is null and void and that the same be delivered by the defendants to the plaintiffs for cancellation. It is further ordered that upon the delivery of a copy of this decree, duly certified by the Prothonotary of Lawrence County, to the recorder of deeds of this county, the recorder shall, upon payment of the proper fees, enter the same or a minute thereof upon the

margin of the record of said deed and that thereafter it be filed among the records of the recorder's office. The costs to be paid by the defendants.

*Opinion on exceptions to decree nisi*

CHAMBERS, J., December 31, 1931.—This case is before the court in banc on exceptions filed to the adjudication and decree nisi. The case is a peculiar one. There are practically no disputed facts. The court fixed a time for hearing, but neither side wished to offer any testimony. The matter was argued on its merits and the court disposed of it on the pleadings, substituting for the usual findings of fact facts which the court deemed to be established by admissions in the pleadings. We followed this with a discussion of the merits, our conclusions of law and a decree nisi. The exceptions are filed to our action in the matter, it being contended that we are without jurisdiction to dispose of the case in this way.

The situation is not without difficulty. We find no rules of equity as prescribed by our Supreme Court directly authorizing the procedure followed. Notwithstanding this, however, it seems to us that where there were practically no disputed facts the court would have jurisdiction to dispose of the matter on the bill and answer. In doing this, we took into consideration all the matters alleged in the answer, with the exception of the last allegation, which is as follows:

"9. Defendants further aver that the plaintiffs have not made all necessary parties to the action parties plaintiffs in this action."

We did not discuss this matter in our adjudication. We did, however, take only such facts as to the user and nonuser of this building as were alleged and set forth in the defendants' answer, and giving full credit to everything therein alleged, reached the conclusion that the title to the real estate had reverted to the plaintiffs, and we are still of that opinion. It is true that the defendants deny that all the parties in interest have been joined as plaintiffs. It is alleged in the bill, however, that they all have been joined. Rule No. 52 of the Equity Rules provides: "It shall not be sufficient for defendant in his answer to deny generally any of the averments of the bill; he must specifically admit, deny or qualify—in the latter event particularly setting forth of what the qualification consists—each and every allegation of the bill, in paragraphs corresponding to the numbers thereof," and further provides that the failure so to do shall be taken as an admission of those facts.

We are of the opinion that this is not a sufficient denial of the allegations in the bill as to the persons interested in this title. Their title is not denied. It is not contended that any of them have conveyed their interest, and none of the facts upon which they rely for their title has been controverted, nor is it suggested what other persons may have an interest, what it is, or how acquired. We are of opinion, therefore, that the allegation as to the title and interest of the plaintiffs must be taken to be admitted by reason of not having been sufficiently denied in the answer.

Again, Rule No. 48 provides that if a bill is defective for want of specifically named parties, that fact should be taken advantage of by way of preliminary objections to the bill before answer filed.

As we see it, the only important question raised by the exceptions is whether or not we have exceeded our jurisdiction in proceeding as we have. If these facts which we have found to be admitted in the pleadings had been established by evidence produced at the hearing, we are satisfied that our adjudication would be a proper one. We are further satisfied that all the facts found by us have been admitted in the pleadings, and upon a hearing the pleadings could have been offered in evidence and the plaintiffs have rested their case thereon. When the

matter was up for argument, the parties were heard on the merits, and while this practice may be irregular, we feel that it is justified under the peculiar situation of this case, and we, therefore, make the following

### Order

And now, December 31, 1931, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: That the exceptions filed to the adjudication and decree nisi, and numbered from 1 to 5, both inclusive, are severally dismissed, the decree nisi is affirmed, and it is directed that the decree nisi be entered as a final decree in this case.